DAVID J. LUJAN
LUJAN & WOLFF LLP
Attorneys at Law
DNA Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone: (671) 477-8064/5
Facsimile: (671) 477-5297 (LAWS)

*Attorney for Plaintiff,*
*A.A.*

FILED
DISTRICT COURT OF GUAM
MAY 09 2018
JEANNE G. QUINATA
CLERK OF COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF GUAM

| | |
|---|---|
| A.A., <br><br> Plaintiff, <br><br> v. <br><br> ROMAN CATHOLIC ARCHBISHOP OF AGANA, a Corporation sole; DOE ENTITIES 1-5; and DOE-INDIVIDUALS 6-50, inclusive <br><br> Defendants. | CIVIL ACTION NO: 18-00021 <br><br> **VERIFIED COMPLAINT FOR DAMAGES FOR** <br><br> 1. Child Sexual Abuse <br> 2. Negligence <br> 3. Negligent Supervision <br> 4. Negligent Hiring and Retention <br> 5. Breach of Fiduciary Duty / Confidential Relationship <br><br> **JURY TRIAL DEMANDED** |

Plaintiff A.A. ("A.A.") files this Complaint for damages based on prior sexual abuse (the "Complaint") against Defendants Archbishop of Agana, a corporation sole, and DOES 1-50 ("Defendants").

### I.
### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because all parties are citizens of diverse states and the amount in controversy exceeds $75,000.00 exclusive of interest, fees, and costs.

2. This Court has personal jurisdiction over this matter because Defendants purposefully availed themselves to the benefit of the laws of this judicial district by regularly transacting and / or conducting business in this state.

//

3. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and or a substantial part of property that is the subject of the action is situated.

## II.
## PARTIES

4. At all times relevant hereto, Plaintiff A.A. was and is an individual who resides in Tamuning, Guam. When he was a minor boy, A.A. was sexually molested and abused by Father Antonio C. Cruz (herein after "Cruz"), an ordained priest of the Roman Catholic Archbishop of Agana. A.A. is currently 48-years old. Plaintiff A.A. is identified throughout this complaint by his initials in order to protect his privacy.

5. At all times relevant hereto, and upon information and belief, the Roman Catholic Archbishop of Agana, a corporation sole, in accordance with the discipline and government of the Roman Catholic Church, is the legal name for Defendant Archbishop of Agana, also known as Archdiocese of Agana. ("Agana Archdiocese"), which is and has been at all times relevant hereto a non-profit corporation organized and existing under the laws of Guam, authorized to conduct business and conducting business in Guam, with its principal place of business in Guam. Agana Archdiocese is responsible and liable in whole or in part, directly or indirectly, for the wrongful acts complained of herein.

6. At all times relevant hereto, Defendant Cruz, now deceased, was an individual and an agent of the Agana Archdiocese and specifically a Catholic priest in Guam. In or about November 1986, Cruz died on or around the age of 62. If not deceased, Cruz would have been individually responsible and liable, in whole or in part, directly or indirectly, for the wrongful acts complained of herein.

7. Defendant-entities named herein as DOES 1 - 5, inclusive, are or at all times relevant hereto, were insurance companies that provided general liability coverage and / or excess level liability coverage pursuant to policies issued to the Agana Archdiocese and / or Roman Catholic Church of Guam. Defendant-individuals named here-in as DOES 6-50, inclusive, are at all times relevant hereto, were agents, employees, representatives and / or affiliated entities of the Agana Archdiocese and /or Roman Catholic Church outside of Guam whose true names and capacities are unknown to A.A. who therefore sues such defendants by such fictitious names, and who will amend the Complaint to show the true names and capacities of each such Doe defendant when ascertained. DOES 6 -50 assisted, aided and abetted and / or conspired with Cruz and / or

other members of the Agana Archdiocese to conceal, disguise, cover up, and / or promote the wrongful acts complained of herein. As such, each such Doe is legally responsible in some manner for the events, happenings, and / or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

8. Each defendant is the agent, servant and/or employee of other defendants, and each defendant was acting within the course and scope of his, her or its authority as an agent, servant and/or employee of the other defendants. Defendants, and each of them, are individuals, corporations, alter egos and partnerships of each other and other entities which engaged in, joined in and conspired with the other wrongdoers in carrying out the tortious and unlawful activities described in this Complaint; and defendants, each of them, ratified the acts of the other defendants as described in this Complaint.

## III.
## INTRODUCTORY ALLEGATIONS

### A. Culture of Sexually Predatory Behavior

9. Since the inception of the priesthood many centuries ago, becoming a Catholic priest has required numerous vows to be taken, among them a vow of celibacy, obedience to the laws of both God and society, and a variety of responsibilities that elevated priests, nuns, agents, and entities that utilized the services of priests and nuns, and agents, to a high status in the community which has induced parents to entrust their children to the care of such priests, nuns, and agents, and likewise induced children to submit to the command and will of such priests, nuns, and agents.

10. The creation of the ritual of altar boy service as a component of the Catholic mass and other religious services with the Catholic Church, if not originally conceived as such, ultimately became a tool by which sexually predatory priest would gain access to young boys and such access was disguised in the form of privileged opportunities by which the church invited certain young boys to serve as altar boys, an opportunity that was viewed as a respectable and distinguished role for a young boy in the community and gave the boy status of wearing liturgical apparel during church services and working side by side with the priests.

11. Further disguising the scheme to have sexual access to young boys was the ritual of requiring altar boys to spend the night at the church rectory, ostensibly to facilitate preparation for the following

morning church services. By presenting the overnight requests in this manner, priests routinely gained the approval of parents; and often times the sexual abuses occurred during the night in their beds at the priests' residences. These seemingly routine practices of having altar boys stay overnight served the predatory priests with a steady supply of victims under the auspices and pretense of formal church protocol, which allowed the church to continually operate a veritable harem of young boys who were readily available to pedophiles who utilized the stature of the church into deceiving the community to regard them as high-level officials.

12. In addition, Catholic Schools were established by the Catholic Church, taught by priest and laypersons, designed to introduce young Catholic education and the prestige of teaching by allegedly esteemed and respected Catholic priests. These schools served as an additional service of sexual ponds by certain deviant priest, nuns, and agents who took advantage of their esteemed role to "troll" minor students and to indulge and satiate their deviant, sexual predatory hunger and thirst.

13. The systematic and ongoing pattern of sexual abuse of young children was characteristic of an internal society within Defendant Agana Archdiocese and whose norms were based on pedophilic conduct disguised by the rituals and pageantry of liturgical services, together with the aura and prestige that was inculcated in the community and which caused the Catholic parishioners to place the highest level of confidence and trust in the church and its clergy. This internal society of sexual corruption sustained itself through a conspiratorial arrangement between priests and higher officials in the Agana Archdiocese whereby they all understood and agreed to remain quiet about each others sexual abuse misconduct, to tolerate such misconduct, and to withhold information about such misconduct from third parties including victims' parents or guardians and law enforcement authorities, in order to protect the offenders and the Agana Archdiocese, thereby placing their loyalty above their duty to protect the minor children and their legal responsibilities.

14. These sexually predatory norms were an integral part of the standards and culture generated by the central authority of the Roman Catholic Church based in Vatican City, Italy, which closely controlled the operations of the Agana Archdiocese, and which aided and abetted such sexually predatory and abusive practices by priests by knowingly tolerating such actions, failing to manage the Agana Archdiocese to prevent sexual misconduct, and engaging in actions to protect and shield priests through such policies as transfers to other jurisdictions, maintaining an internal code of silence, and choosing to remain willfully blind to the ongoing sexual misconduct committed by Catholic priests.

**B. Sexual Abuse Inflicted on Plaintiff A.A.**

15. In or about 1981 or 1982, around the ages of eleven (11) or twelve (12) years old, A.A. became an altar boy at the Saint Anthony Catholic Church in Tamuning, Guam ("Tamuning Parish"). At that time, Cruz was a priest at the Tamuning Parish.

16. During the period in which he served as an altar boy, A.A. was repeatedly sexually molested and abused by Cruz, James Untalan, an older male who was very active at the Tamuning Parish ("Untalan"), and another altar boy.

17. One day after mass, A.A. was giving another altar boy a ride home on his moped and received a citation from Guam Police Department. A.A. was afraid to tell his parents and was not able to pay the citation on his own, so he asked Untalan for help. This is when the sexual abuse began.

18. On numerous occasions, Cruz, Untalan and another altar boy, would take A.A. and other altar boys into a room behind the church where they would fondle A.A. At their direction, A.A. was forced to kiss them, touch their penises, and perform oral copulation on them.

19. A.A. was instructed not to say anything and that if he did, he would go to hell, and that his family would shame him and disown him.

20. In or about November 1986, Father Cruz died on or around the age of 62.

21. Upon information and belief, other priests and representatives of the Agana Archdiocese, and other individuals named herein as Doe defendants, were aware of the sexual abuse committed by Cruz and deliberately remained quiet and withheld such information from third parties including victim's parents or guardians and law enforcements authorities, in order to protect Cruz and the Agana Archdiocese, thereby placing their loyalty above their duty to protect the minor children and their legal responsibilities.

22. At all times relevant hereto, Cruz, prior to his death, sexually abused and molested A.A. when A.A. was a minor and committed such acts while serving as a priest in the Tamuning Parish, in his capacity as an agent and employee of the Agana Archdiocese, which is vicariously liable for his actions.

23. The Agana Archdiocese and DOES 1-50, inclusive, knew that Cruz had sexually abused and molested A.A., and other minor boys, and rather than reporting the matter to law enforcement and without intervening so as to prevent Cruz from engaging in additional instances of sexual abuse, and without seeking to have Cruz acknowledge and take responsibility for his wrongful actions, they assisted Cruz with the

specific purpose or design to keep Cruz's misconduct hidden and secret; to hinder or prevent Cruz's apprehension and prosecution; and to protect the Agana Archdiocese, as well as the Roman Catholic church as an international institution.

24. To this day, the Agana Archdiocese and DOES 1-50 never contacted A.A., A.A.'s family, or other children and their families whom they know Cruz had sexual contact or sexual conduct with. The Agana Archdiocese and DOES 1-50 have been content that any other children that were sexually abused by Cruz while he was serving as a priest, will remain affected by guilt, shame and emotional distress.

25. The criminal offense of Child Abuse is defined in 9 GCA § 31.30, which states in pertinent part as follows:

>	(a) A person is guilty of child abuse when:
>	(1)	he subjects a child to cruel mistreatment; or
>	(2)	having a child in his care or custody or under his control, he:
>	\* \* \*
>	(B) subjects that child to cruel mistreatment; or
>	(C) unreasonably causes or permits the physical or, emotional health of that child to be endangered

26. Under 19 GCA § 13101, the following relevant definitions are provided:

>	\* \* \*
>	(b) Abused or neglected child means a child whose physical or mental health or welfare is harmed or threatened with harm by the acts or omissions of the person(s) responsible for the child's welfare;
>	\* \* \*
>	(d) Child means a person under the age of 18 years;
>	\* \* \*
>	(t) Harm to a child's physical health or welfare occurs in a case where there exists evidence of injury, including but not limited to:
>	\* \* \*
>	(2) Any case where the child has been the victim of a sexual offense as defined in the Criminal and Correctional Code; or
>
>	(3) Any case where there exists injury to the psychological capacity of a child such as failure to thrive, extreme mental distress, or gross emotional or verbal degradation as is evidenced by an observable and substantial impairment in the child's ability to function within a normal range of performance with due regard to the child's culture(.)

27. Under 9 GCA § 25A201, "sexual conduct" with a minor is defined as follows:

>	(o) Sexual Conduct means acts of sexual penetration, sexual contact, masturbation, bestiality, sexual penetration, deviate sexual intercourse, sadomasochistic abuse, or lascivious exhibition of the genital or pubic area of a minor.

6
Case 1:18-cv-00021   Document 1   Filed 05/09/18   Page 6 of 15

28. Under 9 GCA § 25.10(8), "sexual contact" is defined as follows:

> (8) Sexual Contact includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification.

29. Under 9 GCA § 25.20, the crime of Second Degree Criminal Sexual Misconduct with regard to a child is set forth in pertinent part as follows:

> (a) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
> (1) that other person is under fourteen (14) years of age;
> (2) that other person is at least fourteen (14) but less than sixteen (16) years of age and the actor is a member of the same household as the victim, or is related by blood or affinity to the fourth degree to the victim, or is in a position of authority over the victim and the actor used this authority to coerce the victim to submit

30. Under 9 GCA § 28.65, the crime of Indecent Exposure is set forth in pertinent part as follows:

> A person is guilty of indecent exposure if he exposes his genitals or performs any other lewd act under circumstances in which his conduct is likely to be observed by any person who would be offended or alarmed.

31. Under 19 GCA § 13201(b), the following are required to report child abuse:

> (b) Persons required to report suspected child abuse under Subsection (a) include, but are not limited to, ... clergy member of any religious faith, or other similar functionary or employee of any church, place of worship, or other religious organization whose primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, ...

## IV.
## FIRST CAUSE OF ACTION

**Child Sexual Abuse**
**[Against All Defendants]**

32. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33. Defendants Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) are vicariously liable for the sexual abuse committed upon A.A. by Cruz. Public policy dictates that Defendants should be held responsible for Cruz's wrongful conduct under the theory commonly referred to as *Respondeat Superior*.

34. Cruz, prior to his death, committed the offense of Second Degree Criminal Sexual Misconduct, as set forth in 9 GCA § 25.20, by engaging in forced illegal and illicit sexual contact with A.A. when A.A. was under fourteen (14) years of age.

35. Cruz, prior to his death, also committed the offense of criminal sexual conduct, as set forth in 9 GCA § 25.20 (a)(2) by subjecting A.A., who was a child at the time pursuant to 19 GCA § 13101(d) and was under the care, custody or control of Cruz, to cruel mistreatment which included unreasonably causing pain to A.A.'s penis when Cruz forced himself on A.A.'s penis.

36. As a direct and proximate consequence of Cruz's misconduct, A.A. was an abused or neglected child within the meaning of 19 GCA § 13101(b) because his physical or mental health or welfare was and continues to be harmed by the acts or omissions of Cruz, who was responsible for the child's welfare. Moreover, as Cruz's misconduct constitutes the commission of one or more criminal offenses, A.A. has suffered harm to a child's physical health or welfare within the meaning of 19 GCA § 13101(t)(2) because A.A. was the victim of a sexual offense as defined in the Criminal and Correctional Code (9 GCA)

37. For the reasons set forth in the incorporated paragraphs of this Complaint, the sexual abuse of A.A. arose from and was incidental to Cruz's employment with the Agana Archdiocese, and while Cruz, was acting within the scope of his employment with the Agana Archdiocese at the time he committed the acts of sexual abuse, which were foreseeable to Defendants.

38. Defendants ratified and / or approved of Cruz's sexual abuse by failing to adequately investigate, discharge, discipline and / or supervise Cruz and other priests known by Defendants to have sexually abused children, or to have been accused of sexually abusing children; by concealing evidence of Cruz's sexual abuse; failing to intervene to prevent ongoing and / or further sexual abuse; by failing to report the sexual abuse as required under 19 GCA 13201(b); by allowing Cruz to continue in service as a Catholic priest working for the Agana Archdiocese.

39. Despite the pretense of policies and procedures to investigate and address instances of child sexual abuse by priests, Defendants in fact implemented such policies and procedures for no other purpose than to avoid scandal, maintain secrecy and preserve loyalty to fellow clergy, including child molesting clergy, rather than the protection of children. Such hypocritical conduct by Defendants has served to systematically encourage, perpetuate and promote sexually abusive conduct by priests in the Agana

Archdiocese.

40. Defendants either had actual knowledge of Cruz's sexual abuse of A.A., or could have and should have reasonably foreseen that Cruz would commit sexual misconduct on A.A., or other in the course of his employment as a priest in the Tamuning Parish, as an agent and employee of the Agana Archdiocese.

41. As a direct and proximate result of the Defendants' above – described conduct, A.A. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

42. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling A.A. to exemplary and punitive damages.

## V.
## SECOND CAUSE OF ACTION

**Negligence**
**[Against All Defendants]**

43. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44. Defendants Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) had a duty to protect A.A. when he was entrusted to Cruz's care by A.A.'s parents. A.A.'s care, welfare, and / or physical custody were temporarily entrusted to Defendants, and Defendants accepted the entrusted care of A.A. As such, Defendants owed A.A., as a child at the time, a special duty of care, in addition to a duty of ordinary care, and owed A.A. the higher duty of care that adults dealing with children owe to protect them from harm.

45. By virtue of his unique authority and position as a Roman Catholic priest, Cruz was able to identify vulnerable victims and their families upon which he could perform such sexual abuse; to manipulate his authority to procure compliance with his sexual demands from his victims; to induce the victims to continue to allow the abuse; and to coerce them not to report it to any other persons or authorities. As a priest, Cruz had unique access to a position of authority within Roman Catholic families like the family of A.A. Such access, authority and reverence was known to the Defendants and encouraged by them.

46. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Cruz's sexually abusive and exploitative propensities and / or that Cruz was an unfit agent. It was foreseeable that if Defendants did not adequately exercise or provide the duty of care owed to children in their care, including but not limited to A.A., the children entrusted to Defendants' care would be vulnerable to sexual abuse by Cruz.

47. Defendants breached their duty of care to the minor A.A. by allowing Cruz to be in the company of minor children, including A.A., without supervision; by failing to adequately supervise, or negligently retaining Cruz whom they permitted and enabled to have access to A.A.; by failing to properly investigate; by failing to inform or concealing from A.A.'s parents, guardians, or law enforcement officials that Cruz was or may have been sexually abusing minors; by holding out Cruz to A.A.'s parents or guardians, and to the community of Guam at large, as being in good standing and trustworthy as a person of stature and integrity. Defendants cloaked within the facade of normalcy Cruz's contact with A.A. and / or with other minors who were victims of Cruz, and deliberately concealed and disguised the sexual abuse committed by Cruz.

48. As a direct and proximate result of the Defendants' above – described conduct, A.A. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

49. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling A.A. to exemplary and punitive damages.

## VI.
## THIRD CAUSE OF ACTION

**Negligent Supervision**
**[Against All Defendants]**

50. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51. Defendants Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) had a duty to provide reasonable supervision of both Cruz and minor child, A.A.; to use

reasonable care in investigating Cruz; and to provide adequate warning to A.A.'s family, and to families of other children who were entrusted to Cruz, of Cruz's sexually abusive and exploitative propensities and unfitness.

52. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Cruz's sexually abusive and exploitative propensities and/or that Cruz was an unfit agent. Despite such knowledge, Defendants negligently failed to supervise Cruz in his position of trust and authority as a parish priest, where he was able to commit the wrongful acts against A.A. alleged herein. Defendants failed to provide reasonable supervision of Cruz, failed to use reasonable care in investigating Cruz, and failed to provide adequate warning to A.A.'s family regarding Cruz's sexually abusive and exploitative propensities and unfitness. Defendants further failed to take reasonable measures to prevent future sexual abuse.

53. As a direct and proximate result of the Defendants' above – described conduct, A.A. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

54. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling A.A. to exemplary and punitive damages.

## VII.
## FOURTH CAUSE OF ACTION

**Negligent Hiring And Retention**
**[Against All Defendants]**

55. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56. Defendants Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) had a duty not to hire and / or retain Cruz in light of his sexually abusive, exploitative propensities and predatory nature.

57. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Cruz's aberrations and / or that Cruz was an unfit agent. Despite such knowledge and / or an

opportunity to learn of Cruz's sexual misconduct, Defendants negligently hired and retained Cruz in his position of trust and authority as a parish priest, where he was able to commit the wrongful acts against A.A. alleged herein. Defendants failed to properly evaluate Cruz's application for employment, and continued employment, by failing to conduct necessary screening; failed to properly evaluate Cruz's conduct and performance as an employee of Defendants; and failed to exercise the due diligence incumbent upon employers to investigate employee misconduct, or to take appropriate disciplinary action, including immediate termination and reporting and referral of Cruz's sexual abuse to appropriate authorities. Defendants negligently continued to retain Cruz in service as a Catholic priest and teacher, working for Defendants, which enabled Cruz to continue engaging in the sexually abusive and predatory behavior described herein.

58. As a direct and proximate result of the Defendants' above – described conduct, A.A. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

59. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling A.A. to exemplary and punitive damages.

## VIII.
## FIFTH CAUSE OF ACTION

### Breach of Fiduciary Duty And / Or Confidential Relationship
### [Against All Defendants]

60. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61. By holding Cruz out as a qualified priest, teacher, and a person of stature and integrity within the Catholic Archdiocese, Defendants Agana Archdiocese and DOES 1 - 50, together with Cruz himself, invited, counseled, encouraged and induced the Catholic community of Guam, including minors, parents or guardians of minors, and particularly parents or guardians of children who were parishioners and members of the Catholic church volunteering their services, to have trust and confidence in the Agana Archdiocese and its priests, teachers, and agents, and to entrust their children to the company of priests, teachers, and agents

specifically to Cruz, including allowing their children to be alone with Cruz without supervision. Through such actions, Defendants collectively created and entered into a fiduciary and / or confidential relationship with its parishioners, including Catholic parents or guardians and their children, and in particular, children who provided services to the Agana Archdiocese. Accordingly, Defendants collectively created and entered into a fiduciary and / or confidential relationship specifically with the minor child A.A.

62. Through such fiduciary and / or confidential relationship, Defendants collectively caused parents or guardians to entrust their children to priests, teachers, and agents, specifically to Cruz, including the parents of A.A., which resulted in A.A. volunteering his services at church facility with Cruz, resulting in the subject acts of sexual abuse described herein.

63. Defendants collectively breached their fiduciary and / or confidential relationship with the minor child A.A. by violating the trust and confidence placed in them by parishioners and specifically by the minor child A.A., and by engaging in the wrongful acts described in this Complaint.

64. As a direct and proximate result of the Defendants' above – described conduct, A.A. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

65. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling A.A. to exemplary and punitive damages.

//
//
//
//
//
//
//

# IX.
## REQUEST FOR RELIEF

WHEREFORE, Plaintiff A.A. requests judgment against all Defendants on all counts as follows:

1. For all general, special, exemplary and punitive damages, as allowed by law in a sum to be proven at trial and in an amount not less than $5,000,000;
2. For costs and fees incurred herein;
3. Attorneys' fees, as permitted by law; and
4. For other such and further relief as the Court may deem just and proper.

# X.
## DEMAND FOR JURY TRIAL

Plaintiff A.A., through his counsel, David J. Lujan, hereby demands a jury trial of six (6) in the above-entitled action, pursuant to Fed. R. Civ. Proc. 48(a).

Respectfully submitted this 27th day of April 2018.

_____
DAVID J. LUJAN,
*Attorney for Plaintiff,*
A.A.

## VERIFICATION

A.A., declares and states that he is the PLAINTIFF in the foregoing COMPLAINT; that he has read said VERIFIED COMPLAINT FOR DAMAGES and knows the contents thereof to be true and correct, except as to the matters which may have been stated upon his information and belief; and as to those matters, he believes them to be true.

I declare, under penalty of perjury, this 27th day of April, 2018, that the foregoing is true and correct to the best of my knowledge.

_____
A.A.